UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
QUAZI MOHAMMAD REZWANUL
AHSAN NAFIS,

                  Petitioner,

    -against-

UNITED STATES OF AMERICA,

                  Respondent.

-------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
1:12-cr-00720-CBA-1
1:18-cv-02951-CBA

**AMON, United States District Judge:**

Before the Court is Petitioner Quazi Mohammad Rezwanul Ahsan Nafis's motion to vacate his sentence pursuant to 28 U.S.C. § 2255. Nafis pleaded guilty to attempting to use a weapon of mass destruction, in violation of 18 U.S.C. § 2332a(a), for his plot to bomb the Federal Reserve Bank of New York, on February 7, 2013. (ECF Docket Entry ("D.E.") # 54, Ex. A ("Plea").) On August 9, 2013, Nafis was sentenced to 360 months' imprisonment. (D.E. # 42.) Nafis's motion challenges his sentencing on several grounds, including that his counsel provided ineffective assistance in violation of his Sixth Amendment rights, that his Fourth Amendments rights were violated by the government's decision to not arrest him sooner, and that the government encouraged him to increase the scope and nature of the destruction he planned. For the reasons stated below, the Court denies Nafis's motion.

### BACKGROUND

### I.     The Offense

Nafis pleaded guilty to attempting to use a weapon of mass destruction, in violation of 18 U.S.C. § 2332a(a), based on his plot to detonate an explosive-laden vehicle parked next to the Federal Reserve Bank of New York. (D.E. # 54 Ex. B at 17:4–11.) Nafis travelled to the United States on a student visa in January 2012 and soon thereafter began planning and discussing

1

carrying out a terrorist attack.  (D.E. # 29 at 1–2.)  He attempted to recruit others to join his efforts online, eventually stumbling across an FBI confidential source.  (Id. at 3.)  From there he was channeled to an undercover law enforcement agent, posing as an al-Qaeda facilitator, who built the case against Nafis for the next five months.  (Id.)

Nafis initially planned to attack the New York Stock Exchange in a suicide attack, but over the course of the operation settled on a remote explosion at the Federal Reserve.  (Id. at 4.)  To this end he acquired a van, what he believed to be 1,000 pounds of explosive material, and electronics to be used as a detonator.  (Id. at 6–7.)  He repeatedly affirmed his intent to harm America and kill civilians, going as far as to record a video statement explaining his motivations prior to the planned attack.  (Id. at 8.)  After leaving the vehicle outside the Federal Reserve and attempting to detonate what he thought were explosives, Nafis was arrested.  (Id. at 9.)

## II.    The Plea

Nafis's plea agreement with the government included a paragraph waiving his right to appeal and pursue writs of habeas corpus.  The agreement stated:

> The defendant agrees not to file an appeal or otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any other provision, the conviction or sentence in the event that the Court imposes a term of imprisonment of life or below.

(Plea ¶ 4.)

This Court, during the change-of-plea hearing on February 7, 2013, directly addressed this point with Nafis.  The relevant dialogue is as follows:

> THE COURT:    All right. I want to bring one part of the agreement specifically to your attention because it involves giving up another right that you have.  And it's in paragraph 4.
> The defendant agrees not to file an appeal or otherwise challenge by petition pursuant to 28, U.S.C., Section 2255, or any other provision, the

> conviction or sentence in the event that the Court imposes a term of imprisonment of life or below."
> So effectively what that means is, as I understand it, is you will not be able to appeal any sentence the Court imposes on you. Do you understand that?

THE DEFENDANT:    I do.

THE COURT:    And that you will not be able to come back at a later time when you're in prison and challenge pursuant to a habeas corpus petition your conviction or sentence. Do you understand you're giving up those rights?

THE DEFENDANT:    Yeah, I understand.

(D.E. # 54 Ex. B at 11:17-12:11.)

Nafis received a 360-month sentence, the minimum under his Sentencing Guidelines range.

(D.E. # 42.) He now brings a 28 U.S.C. § 2255 claim for post-conviction relief.

* * *

In the present motion, Nafis argues that he has recently come to realize that his Fourth Amendment rights were violated by the government's decision to not arrest him immediately when he appeared on their radar. (D.E. # 52 at 4.) In his reply, he also raises the argument that his counsel rendered ineffective assistance in the course of the events described above, depriving him of his Sixth Amendment rights. (D.E. # 55 at 4.) He seeks vacatur of his 360-month sentence or re-sentencing under a reduced Guidelines range. In response, the government argues that Nafis's appeal should be dismissed in light of the appeal waiver, because it is untimely, and because it fails on the merits. (D.E. # 54 at 8–11.) Nafis's petition is untimely and, regardless, his appeal waiver forecloses his claims, and his motion is therefore denied.

**STANDARD OF REVIEW**

Pursuant to 28 U.S.C. § 2255, federal prisoners may seek post-conviction relief for sentences "imposed in violation of" federal law, entered by courts "without jurisdiction," issued "in excess of the maximum authorized by law," or "otherwise subject to collateral attack." 28 U.S.C. § 2255(a); see also Adams v. United States, 372 F.3d 132, 134 (2d Cir. 2004). The Court also "shall vacate and set the judgment aside" if, among other things, the Court finds that "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). A petitioner may raise a claim of ineffective assistance of counsel for the first time in a § 2255 motion. Massaro v. United States, 538 U.S. 500, 504 (2003). On other claims, if a petitioner procedurally defaults "by failing to raise [them] on direct review," a court generally may not hear them on § 2255 review. Bousley v. United States, 523 U.S. 614, 622 (1998).

Where a petitioner proceeds pro se, his submissions will be "liberally construed in his favor" by the Court, Simmons v. Abruzzo, 49 F.3d 83, 87 (2d Cir. 1995), and read to "raise the strongest arguments that they suggest," Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (internal quotation marks omitted).

**DISCUSSION**

**I.    Procedural Bars**

Nafis's petition was filed untimely, well after the one-year limitations period had expired, and the petition is therefore procedurally barred. See Moshier v. United States, 402 F.3d 116, 118 (2d Cir. 2005). Under the most generous interpretation, his conviction was not final until January 4, 2014. (D.E. # 51.) Nafis did not file his motion to vacate until May 11, 2018—more than four years later. (D.E. # 52.) Nafis argues that his petition qualifies as timely under § 2255(f)(4), because it was filed within one year of his learning the "legal facts" giving rise to his motion. (Id.

4

at 16.) However, § 2255(f)(4) provides that the statute of limitations runs from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4) (emphasis added). Nafis does not specify any new facts that he learned at any time after his conviction. The time at which he became aware of the legal underpinnings of his motion is not relevant to the question of when the statute of limitations began to run under § 2255(f)(4). See, e.g., Locurto v. United States, No. 10-CV-4589 (NGG), 2018 WL 1157793, at *7 (E.D.N.Y. Mar. 2, 2018) ("Under § 2255(f)(4), [t]ime begins when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance." (alteration in original) (internal quotation marks omitted)); Matera v. United States, 83 F. Supp. 3d 536, 547 (S.D.N.Y. 2015) ("Ginsberg's claim that he did not appreciate the significance of the recording in 2008 is irrelevant to the § 2255 statute of limitations. Under § 2255(f)(4), [t]ime begins when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance." (internal quotation marks omitted)); Lebron v. United States, No. 06 CV 5049 (SWK), 2007 WL 1159646, at *2 (S.D.N.Y. Apr. 18, 2007) ("[I]f Lebron truly did not understand the plea proceedings, as he claims, then he knew of his lack of understanding while those proceedings transpired. In this respect, it is irrelevant for purposes of § 2255's one-year period of limitations that Lebron may not have grasped the legal significance of his lack of understanding [until later].").

Moreover, Nafis did not raise any of his claims on direct appeal and therefore, having made no showing of good cause for that failure or actual innocence, all of his claims other than ineffective assistance of counsel are barred on collateral attack. See Bousley, 523 U.S. at 622.

## II.     Appeal Waiver

Even if the petition were not barred as untimely, the plea agreement's waiver bars Nafis from making this 28 U.S.C. § 2255 motion. The Second Circuit has recognized the presumptive

enforceability of plea agreement waivers nearly identical to the one at issue. See United States v. Riggi, 649 F.3d 143, 145 n.1, 150 (2d Cir. 2011) (enforcing an appeal waiver containing language that "[i]t is agreed that the defendant will not file a direct appeal, nor litigate under Title 28, United States Code, Section 2255 and/or Section 2241, any sentence of 18 years or less"); United States v. Monzon, 359 F.3d 110, 113, 116 (2d Cir. 2004) (enforcing appeal waiver containing language that "[i]t is further agreed . . . that the defendant will neither appeal, nor otherwise litigate under Title 28, United States Code, Section 2255, any sentence within or below the Stipulated Guidelines Range set forth above").

The Second Circuit has supported these outcomes by reference to the mutual benefits of the waiver agreement. Criminal defendants limit their exposure and the government obtains the certainty that a Guidelines sentence will not be appealed, saving resources down the road. This allocation of risk and benefits requires that neither party be able to reverse course later. "If either party were able to secure its benefits while making its obligations contingent, the utility of plea agreements would disappear." United States v. Morgan, 406 F.3d 135, 137 (2d Cir. 2005). Allowing a defendant who "has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence" to later attempt to violate that agreement "would render the plea bargaining process and the resulting agreement meaningless." United States v. Salcido-Contreras, 990 F.2d 51, 53 (2d Cir. 1993).

While there are circumstances that would merit setting aside the waiver, "we find waivers unenforceable only in very limited situations . . . ." United States v. Arevalo, 628 F.3d 93, 98 (2d Cir. 2010). These include "when the waiver was not made knowingly, voluntarily, and competently, when the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial or other prohibited biases, when the government breached the plea agreement, or

when the sentencing court failed to enunciate any rationale for the defendant's sentence." Id. (quoting United States v. Gomez-Perez, 215 F.3d 315, 319 (2d Cir. 2000)). The exceptions "occupy a very circumscribed area of our jurisprudence." Gomez-Perez, 215 F.3d at 319.

Nafis's waiver is enforceable because he does not fall into any of the narrow exceptions. The record clearly demonstrates that Nafis was aware of the appeal waiver and he acknowledged his understanding explicitly. (D.E. # 54 Ex. B at 11:17–12:11.) Nafis likewise points to no evidence of constitutionally impermissible factors underlying his sentencing. The government has not breached the plea agreement.

And finally, this Court elaborated substantially on the rationale for Nafis's sentence. The Court discussed Nafis's background and history. (D.E. # 54 Ex. C at 41:20–25 ("I have to consider the history and characteristics of the accused . . . a constellation of psychological problems of the defendant, which it's suggested were created by strict upbringing, an abusive uncle, stuttering that led him to feelings of worthlessness and inferiority.").) The Court also weighed the seriousness of his offense. (Id. at 41:1–4 ("The seriousness of the offense to which this defendant entered his guilty plea is perhaps exceeded only by the offense he would have committed had this plot been successful.").) The sentence was informed by sentences given in similar cases. (Id. at 44:15–17 ("Considering that and considering the other sentences that have been made referenced to and a need to avoid unwarranted sentence disparity. . . .").) And the Court noted the need for deterrence. (Id. at 43:16–20 ("Perhaps nothing would deter those hardened to do this type of activity, but heavy sentences would, no doubt, deter impressionable people, perhaps such as Mr. Nafis, to think twice about engaging in this type of conduct.").) In sum, there was considerable discussion of the factors underlying Nafis's sentence.

### A. Interplay with Ineffective Assistance of Counsel Claim

An otherwise enforceable appeal waiver will be unenforceable "if the record of the criminal proceeding revealed that the claim that the waiver was the result of ineffective assistance of counsel was meritorious." Monzon, 359 F.3d 110, 118–19 (2d Cir. 2004). "[I]f the record on appeal shows that the claim lacks merit, the appeal should be dismissed because the waiver should be enforced." Id. at 119. For an ineffective assistance of counsel claim to be meritorious, the criminal defendant must establish both (1) "that counsel's representation fell below an objective standard of reasonableness" and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984).

Nafis raises his ineffective assistance of counsel claim for the first time in his reply, arguing that his counsel was ineffective because counsel allowed him to plead guilty to a capital offense without the representation of two attorneys. (D.E # 55 at 4.) However, none of the counts Nafis pled guilty to carry the possibility of the death penalty. (D.E. # 54-1.)

Nafis also argues that counsel was ineffective because counsel did not review discovery materials with him and did not go to the crime scene to corroborate the prosecution's allegations. (Id. at 5.) The Court inquired of Nafis at his guilty plea and sentencing about his counsel's representation and whether his counsel had reviewed pertinent materials with him, which he answered in the affirmative. (D.E. # 54-2, 55-3.) Nafis does not show a reasonable probability, nor can the Court construe such an argument on his behalf, that but for an alleged failure to review all of the discovery material in the case, Nafis "would not have pled guilty and would have proceeded to trial." United States v. Arteca, 411 F.3d 315, 320 (2d Cir. 2005). The government was able to muster ample evidence of Nafis's attempt to detonate an explosive device in front of the Federal Reserve. Even if his counsel did not go over every page of the discovery materials

8

with him, the Court finds that to be a reasonable conservation of counsel's resources in light of the overwhelming evidence prompting defense counsel to advise Nafis to accept a guilty plea.

As to Nafis's contention that counsel should have gone to the scene of the crime, it is as an initial matter not clear to the Court what the crime scene would be, as Nafis did not succeed in detonating an explosive device anywhere. Regardless, to the extent Nafis is arguing that counsel should have visited the Federal Reserve in order "to corroborate any and all allegations that the prosecution was presenting," it is clear to the Court that counsel's choice not to do so was eminently reasonable. The Court does not see how doing so would have been a beneficial use of counsel's time. Counsel provided able representation to Nafis in the face of serious, substantiated charges. The Court also does not believe that, but for counsel's failure to visit the Federal Reserve, the outcome of the case would have been different in light of the evidence being mustered by the government when Nafis decided to enter a plea of guilty.

## CONCLUSION

For the foregoing reasons, the Court DENIES Nafis's § 2255 motion. Because he has not made a substantial showing of the denial of any constitutional right, the Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253.

SO ORDERED.

Dated: April 8, 2020
      Brooklyn, New York

    /s/ Carol Bagley Amon_____
    Carol Bagley Amon
    United States District Judge

9